UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALECIA J.,<br><br>                Plaintiff,<br><br>    v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Case No. 3:23-cv-5290-TLF<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

      Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 4. Plaintiff challenges the Administrative Law Judge's decision finding that plaintiff was not disabled. Dkt. 8, Complaint.

      Plaintiff filed her applications for SSI and DIB on June 5, 2019. AR 78, 372–85. Her amended alleged date of disability onset is September 30, 2017. AR 78, 104. Her date last insured, for the purposes of her DIB eligibility, is June 30, 2021. AR 78. After her applications were denied initially and upon reconsideration (AR 200–51), her requested hearing before the Administrative Law Judge (" ALJ") was held on October

21, 2021 (AR 97–139). The ALJ found plaintiff had the following severe impairments: major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, and attention deficit hyperactivity disorder. AR 81.

The ALJ posed hypothetical questions to the Vocational Expert ("VE") (AR 134–39) and based on the VE's testimony, the ALJ found plaintiff had the Residual Functional Capacity ("RFC") to perform a full range of work at all exertional levels with the following limitations:

> She can understand, remember, and apply detailed, but not complex, instructions and perform predictable tasks, but not in a fast-paced, production-type environment. She can have exposure to occasional workplace changes and occasional interaction with co-workers, but no interaction with the general public.

AR 83. The ALJ found that plaintiff had no past relevant work but that, given these restrictions, plaintiff could work as an industrial cleaner, hospital cleaner, or hand packager. AR 88–89.

## DISCUSSION

**1. Plaintiff's statements regarding symptoms and limitations**

Plaintiff argues the ALJ erroneously rejected her statements and testimony. Dkt. 15 at 8–16. Plaintiff testified and wrote in a function report that her interpersonal difficulties and anxiety prevent her from leaving her home or being around others. AR 112–13, 126–27, 413, 417. She also indicated she has difficulties controlling her anger and other emotions, and that she has difficulties concentrating, understanding, following instructions, and completing tasks. AR 113, 419. Plaintiff also alleged symptoms from her physical impairments, and the Court addresses her alleged physical symptoms in the next section.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In assessing a plaintiff's credibility, the ALJ must first determine whether plaintiff has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged symptoms. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). If such evidence is present and there is no evidence of malingering, then the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear and convincing reasons. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Lingenfelter*, 504 F.3d at 1036).

Here, the ALJ stated that plaintiff's "severe medically determinable impairments could reasonably be expected to cause the alleged symptoms," but then stated that "claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." AR 84.

The ALJ must "set forth the reasoning . . . in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 486, 492 (9th Cir. 2015). The Court cannot discern whether the ALJ found that any of plaintiff's symptoms could not be expected to have been caused by her impairments. And if the ALJ did find some symptoms could not be expected to be cause by her impairments, the Court cannot discern from the ALJ's decision which symptoms those were. For these reasons, the Court will review the ALJ's decision and determine whether "specific, clear, and convincing reasons" were given for discounting plaintiff's testimony.

3

The ALJ gave several reasons for finding plaintiff's testimony about the extent of her subjective limitations unpersuasive. *See* AR 84–86. First, the ALJ found that plaintiff's activities of daily living were inconsistent with her testimony. AR 84. An ALJ may discount a claimant's testimony based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ pointed to evidence that plaintiff cared for her four children and her home, shopped regularly at stores, cooked three meals per day, attended church, and went to her children's sports games. *See* AR 84 (citing AR 455–65, 516–27, 614, 677–87). Plaintiff testified that two of her neighbors helped with some of her responsibilities (although she told medical professionals in 2017 that she did not have any help at home, AR 573, 577), but even with such help, the ALJ's decision is supported by the record -- these activities were inconsistent with her testimony that, due to symptoms of major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder, she was unable to leave the house or be around others. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("The ALJ could reasonably conclude that Molina's activities, including walking her two grandchildren to and from school, attending church, shopping, and taking walks, undermined her claims that she was incapable of being around people without suffering from debilitating panic attacks.").

Second, the ALJ found that plaintiff's testimony was undermined by her sparse record of seeking treatment or use of medication. *See* AR 85. "Unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" is a valid basis on which an ALJ can find a claimant's testimony undermined.

1    *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Here, as the ALJ pointed out,
2    in December 2017 plaintiff reported having used few medications and denied receiving
3    any mental health treatment since 2010. AR 85 (citing AR 571). She saw a therapist
4    from January 2018 to August 2018, but failed to attend appointments after that. *Id.*
5    (citing AR 661, 667–78, 672–73, 675–76, 977). She attended an intake session in July
6    2019 and indicated she was doing so because it was required to receive state disability
7    benefits. AR 86 (citing AR 868). She attended two treatment appointments in 2021. *Id.*
8    (citing AR 976, 988, 1012).

9        Plaintiff argues her lack of treatment was not a proper reason for finding her
10   testimony undermined because "it is a questionable practice to chastise one with a
11   mental impairment for the exercise of poor judgment in seeking rehabilitation." Dkt. 15
12   at 10 (citing *Garrison v. Colvin*, 759 F.3d 995, 1014 n.24 (9th Cir. 2014)). In *Garrison*,
13   the Ninth Circuit found an ALJ improperly discredited a claimant on the basis of a lack of
14   treatment where "the record show[ed] that [her] occasional decisions to go 'off her
15   meds' were at least in part a result of her underlying bipolar disorder and her other
16   psychiatric issues." 759 F.3d at 1014 n.24. In *Molina*, on the other hand, the Ninth
17   Circuit found that the failure to seek treatment was a proper basis to discount a
18   claimant's testimony where there was ample evidence she was told she should seek
19   such treatment, "she failed to do so until after she applied for disability benefits," and
20   "there was no medical evidence that [her] resistance was attributable to her mental
21   impairment." 674 F.3d at 1114.

22       This case bears more similarity to *Molina* than to *Garrison*. Plaintiff has pointed to
23   no evidence suggesting that her resistance to treatment was attributable to her mental

impairment. At least one provider recommended further mental health treatment, including therapy. *See* AR 680. Plaintiff had not pursued mental health treatment during the seven years leading up to her alleged onset date. *See* AR 571. At least some of the treatment she sought after her alleged onset date was to fulfill state agency disability requirements. *See* AR 868. Under these circumstances, the ALJ reasonably discounted plaintiff's testimony because she had failed to pursue further treatment without showing any link to her symptoms or limitations. *Molina*, 674 F.3d at 1114.

Plaintiff also points out that she provided reasons for not taking medication—she testified that she had adverse reactions to most of the medications she tried. Dkt. 21 at 7 (citing AR 113–14). While this shows she had an explanation for not taking certain medications, it does not demonstrate she had an explanation for failing to pursue any additional treatment options.

Third, the ALJ discounted plaintiff's testimony because it was inconsistent with normal mental status and psychological examination results. *See* AR 85–86. "When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022). But "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). Here, the ALJ pointed to evidence showing normal examination findings, including normal thought content, memory, and concentration. AR 85–86 (citing AR 572–73, 681). The ALJ reasonably found this to be inconsistent with plaintiff's allegations of impaired concentration, memory, and understanding.

In sum, the ALJ gave specific, clear, and convincing reasons for discounting plaintiff's testimony about her mental symptoms.

**2. Plaintiff's Physical Impairments**

Plaintiff argues the ALJ erred in finding her physical impairments, including fibromyalgia, to be non-severe impairments at step two of the sequential evaluation process. *See* Dkt. 15 at 3.

The medical severity of a claimant's impairments is considered at step two. 20 C.F.R. § 404.1520(a)(4)(ii), § 416.920(a)(4)(ii). An impairment is not considered to be "severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); Social Security Ruling ("SSR") 96-3p. "[O]nce a claimant presents evidence of a severe impairment, an ALJ may find an impairment or combination of impairments 'not severe' at step two 'only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Glanden v. Kijakazi*, 86 F.4th 838, 844 (9th Cir. 2023) (quoting *Webb v. Barhnart*, 433 F.3d 683, 686 (9th Cir. 2005)).

The ALJ must consider all limitations and restrictions when formulating the RFC, even those stemming from impairments that are not "severe*." See Buck v. Berryhill,* 869 F.3d at 1049; 20 C.F.R. § 404.1520(e). For this reason, the RFC "should be exactly the same regardless of whether certain impairments are considered 'severe' or not" at step two, and so, ordinarily, a finding that an impairment is not severe at step two is harmless error. *Buck*, 869 F.3d at 1049. Therefore the question may be characterized as not whether the ALJ erred at step two by failing to identify fibromyalgia as a severe

impairment, but, rather, whether the ALJ erred in failing to consider symptoms and limitations associated with fibromyalgia in formulating the RFC.

Plaintiff was diagnosed with fibromyalgia in 2018. *See* AR 885–87. She testified fibromyalgia caused her to experience: persistent pain in her neck, hips, and legs; inhibited sleep; difficulty standing or walking for more than ten minutes at a time without pain; and difficulty walking for more than five minutes at a time without pain. AR 115–16, 129.

At step two, the ALJ found plaintiff's fibromyalgia was a medically determinable impairment, although the ALJ found it was non-severe. *See* AR 81. Under SSR 12-2p, "[fibromyalgia] which [is] determined to be a[] [Medically Determinable Impairment] satisfies the first step of [the agency's] two-step process for evaluating symptoms." That is, once the ALJ determined plaintiff's fibromyalgia was a medically determinable impairment, the ALJ could only reject plaintiff's testimony regarding the severity of her fibromyalgia by offering "specific, clear, and convincing reasons" for doing so. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014)

The ALJ offered several reasons for disbelieving plaintiff's testimony about her physical impairments. *See* AR 82, 86. He said that her statements were inconsistent with her activities of daily living. *See id.* In particular, he pointed to the following activities performed by plaintiff: caring for her children and dogs, driving, shopping in stores, cooking, and doing household chores. AR 86 (citing AR 456, 462, 521–23, 678). The Court cannot discern how these activities are inconsistent with plaintiff's testimony of difficulties standing and walking for extended periods of time, nor can the Court discern how such activities suggest plaintiff is capable of work at all exertional levels.

Because the ALJ failed to explain his reasoning "in a way that allows for meaningful review," *Brown-Hunter v. Colvin*, 806 F.3d 486, 492 (9th Cir. 2015), he erred in rejecting plaintiff's physical symptoms due to her activities of daily living.

The ALJ also asserted, with respect to plaintiff's physical impairments, that "imaging is unremarkable, and the claimant has no consistent pain complaints and no ongoing specialty care." AR 81 (citing AR 581–638, 688–831). However, unremarkable imaging studies are not inconsistent with pain caused by fibromyalgia. *See Revels v. Berryhill*, 874 F.3d 648, 655–56 (9th Cir. 2017). Contrary to the ALJ's statement that plaintiff had no consistent pain complaints, treatment notes throughout 2018 indicate plaintiff presented with physical pain. *See, e.g.*, AR 596–97 (noting pain with motion, tenderness, and back pain at multiple sites), 604 ("back pain, joint pain, joint swelling, muscle weakness and neck pain"), 716–17 ("Assessment: Chronic neck and back pain"), 762 ("recently saw a rheumatologist for generalized pain"), 783 (noting mild and moderate pain with motion). And as those same treatment notes demonstrate, it was not the case that plaintiff failed to seek treatment. Nor did the ALJ discuss any evidence showing plaintiff failed to follow a prescribed course of treatment. As such, plaintiff's lack of ongoing specialty care was not a valid reason to discount her testimony about her physical symptoms. *See Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

Finally, the ALJ disbelieved plaintiff's testimony about her physical impairments because of an inconsistent statement she made about the frequency with which she walked. *See* AR 84 (citing AR 463 (October 2019 function report: "I don't go walking"), AR 614 (March 2017 treatment note: "exercise: yes, walk[s] '1 hr per day'")).

An ALJ can consider "prior inconsistent statements" in rejecting a claimant's testimony. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). But a single inconsistent statement is not "adequate to support" a decision rejecting a claimant's subjective symptom testimony. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Schow v. Astrue*, 272 F. App'x 647, 652–53 (9th Cir. 2008) (unreported earnings were "proper for consideration, but hardly compel[led] the adverse credibility finding"). Thus, even if the ALJ properly considered plaintiff's inconsistent statements, this alone is insufficient to render the other errors the ALJ made in evaluating plaintiff's subjective testimony about her physical symptoms harmless.

In sum, the ALJ erroneously failed to consider plaintiff's fibromyalgia and other physical impairments in formulating the RFC. Because the adequate consideration of such impairments may have resulted in a different RFC with exertional limitations, this error is not harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Accordingly, on remand, the ALJ must reassess plaintiff's physical impairments, including her fibromyalgia.

3. **Medical evidence.**

Plaintiff argues the ALJ erred in evaluating the medical opinions of Christopher Edwards, Psy.D., Terilee Wingate, Ph.D.; William Waugh, D.O.; Jan Lewis, Ph.D.; and Michael Regets, Ph.D. Dkt. 15 at 3–8.[1]

---

[1] Plaintiff summarizes much of the rest of the medical evidence but fails to make any substantive argument about the ALJ's evaluation of any opinions or impairments other than those discussed herein. *See* Dkt. 15 at 5–7. The Court will not consider matters that are not "'specifically and distinctly'" argued in the plaintiff's opening brief. *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)). The Court thus does not consider the ALJ's evaluation of any opinions other than those discussed herein.

Under the 2017 regulations applicable to this case, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). Under the new regulations,

> an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2).

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

### a. Christopher Edwards, Psy.D. and Terilee Wingate, Ph.D.

Dr. Edwards completed a functional assessment of plaintiff in December 2017 based on a mental examination he performed. AR 570–74. He opined plaintiff was "moderately to significantly impaired" in her ability to complete a normal workday or workweek without interruption from mental health symptoms and moderately impaired in her ability to maintain regular attendance in the workplace. *See* AR 573–74. He opined plaintiff's ability to deal with stress in the workplace was markedly impaired. AR 574.

Dr. Wingate completed a psychological evaluation of plaintiff in May 2019 based on an examination and interview. AR 677–81. She opined plaintiff had marked limitations in her abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; maintain appropriate behavior in a work setting; and complete a normal workday and workweek without interruptions from psychologically based symptoms. AR 679–80.

1      The ALJ found Dr. Edwards' opinion "somewhat persuasive" and Dr. Wingate's opinion "unpersuasive." AR 87. The ALJ considered both the supportability and consistency factors. *See id.* With respect to the supportability factor, the ALJ found that Dr. Edwards' opinion was only "partially supported by his exam findings," but that Dr. Edwards based "at least some of his opinion on the claimant's self-reports." AR 87. The ALJ found Dr. Wingate's opinion was unsupported by her exam findings because "with the exception of insight and judgment, Dr. Wingate found the claimant's mental-status examination normal." *Id.*

       The supportability factor considers how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). A conflict between a source's medical opinion and their treatment notes may be a valid reason for rejecting their opinion. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Generally, "a physician's opinion of disability premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations may be disregarded where those complaints have been properly discounted." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quotation omitted). But this rule "does not apply in the same manner to opinions regarding mental illness" because "diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient." *Id.*

       Here, the ALJ improperly relied on the normal mental status examination results from Drs. Wingate and Edwards without considering the remainder of the explanations they provided for their opinions. For instance, Dr. Wingate opined that plaintiff would have difficulties maintaining appropriate behavior in the workplace. AR 679. She

explained in her opinion that plaintiff was "emotionally labile and quick to anger" because of her personality disorder. AR 679.

Similarly, Dr. Edwards opined plaintiff had a marked impairment in handling the normal stresses of a workplace because of a "lack of adequate coping skills or mental health intervention." AR 574. These opinions are not inconsistent with the normal mental status examination findings described by Drs. Edwards and Wingate, which focused on things like plaintiff's concentration, abstract thinking, and fund of knowledge. *See* AR 572–74, 680–81. These notations reflect "the clinician's observations of the patient," a valid part of a mental health evaluation, even if they are based on plaintiff's self-reports. *See Buck*, 869 F.3d at 1049. In turn, the ALJ's determination that the opinions were not supported was not supported by substantial evidence when considering the record as a whole.

With respect to the consistency factor, the ALJ found both opinions inconsistent with the normal mental status examinations in the record and plaintiff's activities of daily living. *See* AR 87. The consistency factor considers the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources." 20 C.F.R. § 404.1520c(c)(2). An opinion's inconsistency with the medical record and with a claimant's activities of daily living may be a valid basis on which to not credit that opinion. *See Woods*, 32 F.4th at 792–93.

However, the ALJ's duty to set forth his reasoning "in a way that allows for meaningful review," *Brown-Hunter*, 806 F.3d at 492, requires building an "accurate and logical bridge from the evidence to [the ALJ's] conclusions." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003).

13

The ALJ failed to do so here. With respect to plaintiff's normal mental status examinations, the ALJ did not discuss any particular normal mental examinations in discussing the opinions, and, in the remainder of his decision, the only normal mental status findings mentioned were those of Drs. Wingate and Edwards. *See* AR 85–87.

With respect to plaintiff's activities, the ALJ pointed to her activities of raising children, driving, shopping, cooking, and cleaning. *See* AR 87. These activities would not be relevant to show plaintiff is able to, for instance, deal with stresses typical of a workplace or perform activities within a schedule, as Drs. Wingate and Edwards opined she was unable to do. The ALJ's evaluation of the consistency factor was therefore erroneous.

In sum, the ALJ erred in his evaluation of the opinions of Drs. Wingate and Edwards. An error that is inconsequential to the non-disability determination is harmless. *Stout*, 454 F.3d at 1054. If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id* at 1052, 1054. Here, the erroneous evaluation of the opinions of Drs. Wingate and Edwards was not harmless, as the opined limitations—such as an inability to maintain appropriate behavior, be punctual, attend work, and manage stresses—not reflected in the RFC. Accordingly, remand is required for the ALJ to reassess these opinions.

**b.  William Waugh, D.O.**

Dr. Waugh completed a consultative examination of plaintiff in December 2017. AR 575–80. He opined plaintiff was capable of medium work and otherwise had few limitations. *See id.* The ALJ found the opinion unpersuasive because it was inconsistent

with medical evidence and with plaintiff's activities. *See* AR 81–82. Plaintiff describes Dr. Waugh's opinion but does not make any argument with respect to the ALJ's evaluation of that opinion. *See* Dkt. 15 at 5. Plaintiff says only that she is "actually more limited, not less limited than was opined by Dr. Waugh, as Dr. Waugh, like the ALJ, failed to consider the functional effects of [plaintiff's] fibromyalgia." *Id.* The Court addresses the ALJ's failure to consider plaintiff's fibromyalgia above. Plaintiff has failed to demonstrate that the ALJ harmfully erred in evaluating Dr. Waugh's opinion. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. at 396, 407–09 (2009)).

      **c.  Jan Lewis, Ph.D., and Michael Regets, Ph.D.**

State agency psychological consultants Dr. Lewis and Dr. Regets submitted opinions in August 2019 and January 2020. *See* AR 152, 183. For the most part, both consultants opined plaintiff had few limitations, was able to maintain attention and concentration, and could work with some co-workers and in an environment with limited public contact. AR 152, 166, 182–83, 196–97. The ALJ found these opinions "somewhat persuasive." *See* AR 86.

Plaintiff challenges only one of the reasons the ALJ gave for rejecting some of the limitations opined by Drs. Lewis and Regets: that the limitations were inconsistent with plaintiff's failure to follow through with counseling and take medications. Dkt. 15 at 8. Plaintiff states that her limited treatment "simply shows that she has impaired judgment." *See id.* As described above, the ALJ reasonably concluded otherwise. The Court therefore finds no reversible error in the ALJ's evaluation of the opinions of Drs. Lewis and Regets.

### 4. Lay witness evidence

Plaintiff argues the ALJ erred in evaluating the statements of two lay witnesses: SSI Facilitator Cindy Harbaugh and plaintiff's friend. Dkt. 15 at 16–17. In June 2019, Ms. Harbaugh interviewed plaintiff and noted on a form for recording observations during the SSI interview she had difficulties in concentration and appeared to be in pain. AR 555.

Plaintiff's friend completed a questionnaire in October 2021. AR 556–62. She said plaintiff had periodic panic attacks, was prone to anger and mood swings, was forgetful, had difficulties staying on tasks, was prone to emotional lability, had difficulties walking and lifting, and has difficulties with forming plans. *See id.*

Under the pre-2017 regulations, the ALJ's decision to discount the opinion of a non-acceptable medical source, such as a friend or a family member, is upheld if the ALJ provided "reasons germane to each witness for doing so." *Turner v. Commissioner of Social Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); 20 C.F.R. § 404.1502.

Plaintiff argues that, under this standard, the ALJ erred in failing to discuss Ms. Harbaugh's statement and in failing to give germane reasons for rejecting plaintiff's friend's statement. Dkt. 15 at 16–17. Defendant responds that, under the new regulations, the ALJ was not required to give germane reasons for rejecting the statements of Ms. Harbaugh and plaintiff's friend. Dkt. 20 at 6–7. The Court need not determine whether this is so, as it finds that the ALJ met the germane reasons standard urged by plaintiff.

The ALJ gave germane reasons for rejecting plaintiff's friend's statement. The ALJ said that all but two of the thirteen "questions on the form appear to have been answered by the claimant herself." AR 88. Plaintiff does not challenge the substance of this finding, but, rather, asserts that it is not a germane reason for rejecting the statement. *See* Dkt. 15 at 17. The Court disagrees. If most of the statement was written by plaintiff herself, that calls into question the usefulness of the statement, as lay witness statements are useful because they "offer a different perspective" than the remainder of the evidence. *See Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017).

Additionally, evidence of a close relationship or potential influence bearing upon a lay witness can be a valid basis on which to reject lay witness testimony. *See Greger v. Barnhart*, 464 F.3d 968, 972–73 (9th Cir. 2006); *cf. Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (close relationship not germane reason where it had no "apparent bearing on [lay witness's] credibility"). For these reasons, the ALJ's determination that most of the statement had been completed by plaintiff was a germane reason for discounting the statement.

The ALJ was not required to discuss Ms. Harbaugh's statement. The observations of agency personnel are typically "based upon brief encounters" and intended only "to gather basic information about plaintiff's condition, not to provide testimony about her functional limitations." *Michelle M. v. Comm'r of Soc. Sec.*, No. 3:19-CV-5499-TLF, 2020 WL 6074460 at *6 (W.D. Wash. Oct. 13, 2020). Such statements are therefore far removed from "lay witness testimony as to a claimant's symptoms or how an impairment affects [her] ability to work," the type of lay witness testimony for which germane reasons are required to reject. *See Nguyen v. Chater*, 100

F.3d 1462, 1467 (9th Cir. 1996) (citations omitted); *cf. Smolen*, 80 F.3d at 1289 ("[T]estimony from lay witnesses who see the claimant every day is of particular value . . . ."). Nor is such a statement significant and probative—the standard applicable to other evidence, *see Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984)—as it was based on only a brief encounter and was not intended to assess the likely limitations plaintiff might have in a working environment.

In sum, the ALJ did not err in his evaluation of the statements of Ms. Harbaugh and plaintiff's friend.

**5. RFC Formulation**

Plaintiff argues the ALJ erred in his assessment of her RFC because she failed to include the limitations described by Drs. Edwards and Wingate and in plaintiff's subjective testimony. Dkt. 15 at 17–18. Because the Court has found the ALJ erred in addressing the opinions of Drs. Edwards and Wingate, as well as in evaluating plaintiff's physical impairments, the ALJ committed harmful error in assessing plaintiff's RFC. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (A [VE's] "opinion about a claimant's [RFC] has no evidentiary value" if it does not "set out all the limitations and restrictions of the particular claimant.")

CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings.

On remand, the Commissioner is directed to conduct a de novo hearing; the ALJ must re-evaluate plaintiff's testimony about her physical impairments and the opinions of Drs. Edwards and Wingate, reassess plaintiff's RFC, and proceed with the sequential evaluation process, as necessary.

Dated this 19th day of March, 2024.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge